## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| COREY T. WLASH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:09-0199 |
| | ) | |
| D. BERKEBILE, Warden, | ) | |
| FCI Beckley, | ) | |
| | ) | |
| Respondent. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody and Memorandum in Support.[1] (Document No. 1.) Petitioner states as grounds for relief under Section 2241 as follows:

1. The Bureau's failure to comply with 28 C.F.R. § 541.15(b) constitutes a procedural default of the Inmate Disciplinary Process as set out in Chapter V of the Code of Federal Regulations. Such failure is fatal, requiring dismissal of the charges against Petitioner;

2. The Bureau violated Petitioner's due process rights relating to the discipline process by failing to investigate and present exculpatory evidence requested by Petitioner; and

3. The denial of Petitioner's right to due process throughout the Bureau's discipline process continued through his appeals of the DHO's findings to both the Regional and Central offices of the BOP.

In support of Ground One, Petitioner argues that Respondent "violated the Federal Regulations by not holding Petitioner's Initial hearing until March 25, 2008." (Id., p. 5.) Petitioner

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

contends that Section 541.15 "requires the initial hearing be held within three working days of staff becoming aware of the incident, excluding that day, and holidays and weekends." (Id., p. 6.) Petitioner states that "staff became aware the incident at 6:15 p.m. on March 19, 2008" and Petitioner's "Initial hearing was held by the UDC the afternoon of March 25, 2008." (Id.) Petitioner, therefore, argues that "[s]ince the Initial Hearing in this matter was not held until the afternoon of the fourth workday, the BOP is procedurally defaulted, a fatal error." (Id., pp. 6 - 7.) Petitioner further claims that the BOP violated its written policy because he did not receive "a written copy of the decision and disposition within 10 days of the DHO's decision." (Id., p. 11.)

In support of Ground Two, Petitioner argues that the investigating officer "failed to 'thoroughly investigate' by failing to review the pertinent security tape as requested by Petitioner." (Id., p. 8.) Petitioner states that he also "requested that the security video of the purported incident be reviewed as such would support his innocence claim," but "the security video was not reviewed prior to the Initial Hearing." (Id.) Petitioner explains that he "has claimed from the very beginning of this case that he is innocent of these charges, that Officer Crain lied when making his written description of the incident, and that not only did Officer Whitt lie in his supporting memorandum, Mr. Whitt was not even present during the vast majority of the incident, arriving on the scene at the very conclusion." (Id., p. 10.) Petitioner contends that "[a] review of the security video will prove this assertion." (Id.)

In support of Ground Three, Petitioner claims that his due process rights were violated based upon the following: (1) The Regional Director White's "failure to review the entire record on appellate review denied Petitioner due process" (Id., p. 12.); and (2) The National Appeals Administrator's denial of "Petitioner's appeal of the Regional Director's denial in 'rubber stamp'

style" (Id., p. 13.).  Therefore, Petitioner requests that the Court "grant his requested writ of habeas corpus, the purging of Petitioner's conviction from his institutional record, and the restoration of the 40 days of GTC taken from him." (Id., p. 16.)

## DISCUSSION

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of

entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long

4

as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir

1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167,

133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated

that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are

primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner,

515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication of

error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in

charging and considering Petitioner's violation of Offense Codes 203, 307, and 312,[2] prison officials

adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau

of Prisons' Program Statement 5270.07. Petitioner  received all documents pertinent to the charges

against him, was advised of his rights, and had ample opportunity to present a defense to those

charges. Petitioner, however, contends that Respondent violated his due process rights because he

---

[2]  The Incident Report dated March 19, 2008, described the incident as follows:

On the above date and time, I, Jeffrey Crain, while supervising line #1 during the
dinner meal, I saw Inmate Wlash, # 70168-083, scan his I.D. card with fresh blood
on the tip of his finger. He stated to the inmate in front of him that his fingernails had
cut his finger; then he came to me complaining that the leg bone had been pulled out
of his chicken. I told him there was nothing wrong with his chicken, and that I would
not replace it. He then dropped his try on the counter in front of me and said "Then
you eat it," and started walking away. I gave him two loud verbal commands to stop.
He looked at me and kept walking. I pursued him telling him to stop. He turned
towards me and his right arm almost struck me. I grabbed a hold of his coat sleeve,
and he began trying to jerk away saying "you better let me go right now." He
repeated this twice while trying to pull away from me. He did  have his hands
clinched into fists. Once I called compound, he stated "I'm not afraid of that, I'll
fight them to."

(Document No. 1-1, p. 1.)

did not receive his initial hearing within three days and he did not receive the written decision within 10 days. The regulations provide that an inmate is "ordinarily" entitled to an initial hearing within three days and a written copy of the decision "ordinarily" within 10 days of the DHO's decision. See 28 C.F.R. § 541.15(b)("Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident."); and 28 C.F.R. § 541.17(g)("The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision."). The undersigned, therefore, finds that prison officials did not violate Section 541.15(b) or Section 541.17(g). Furthermore, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation.

Next, Petitioner contends that he was denied due process when prison officials refused to review the security video footage or allow Petitioner to review the footage. Petitioner contends that he requested that the security video footage be review based upon his response made in Section 17 of the Incident Report. In Section 17 of the Incident Report, Petitioner stated as follows: "I was wrong for making a scene in front of the other inmates. Check the cameras. I was escorted to SHU uncuffed by one staff. I was not a threat. I only turned around when he grabbed me." (Document No. 1-1, p. 1.) Additionally, Petitioner references his Request for Administrative Remedy filed on May 14, 2008, as evidence that he sought the production of the security video footage. The undersigned notes, however, that Petitioner's DHO hearing was conducted on April 8, 2008, prior to Petitioner's administrative remedy request for the video footage. In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." The undersigned finds that prison staff, the UDC and the DHO acted fully within their discretion in developing the

6

evidence which resulted in the finding that Petitioner was guilty of violating Offense Codes 203 and 312. The finding was supported by the evidence and the disallowance of 40 days of good conduct time was lawful and appropriate. In addition to the Incident Report and Investigation, the DHO considered written statements from M. Whitt and Jeffrey Crain, Cook Supervisors. (Document No. 1-1, p. 8.) In finding that Petitioner violated Codes 203 and 312,[3] the DHO specifically stated that it relied upon the following:

> The evidence relied upon by the DHO to support this finding were the written accounts of two staff members, Jeffrey Crain, Cook Supervisor, who provide a written statement wherein he reports he issued [Petitioner] the order to stop, and [Petitioner] made the above cited remarks directly to him, and the corroborating account of M. Whitt, Cook Supervisor, who reported being on the scene and seeing [Petitioner] walking away from Mr. Crain's grasp, with [his] hands clenched into fists, and repeated saying "you better let me go right now.

> At the DHO hearing, [Petitioner] admitted [he] was upset and cannot say for sure whether [he] had balled [his] hands into fists. [Petitioner] admitted tossing [his] food tray on the counter, in front of Mr. Crain, and saying, "Then you eat it," and [Petitioner] admitted telling Mr. Crain to let [him] go, but claim [he] did not say [he] would fight the compound officers too. [Petitioner] also denied jerking away from Mr. Crain when he tried to stop [Petitioner] from walking away. However, [Petitioner] concedes that [he] acted up and knew [he] was wrong.

---

[3] The DHO found as follows:

I find you committed the prohibited acts of Threatening Another Person with Bodily Harm, Code 203, and Insolence Toward a Staff Member, Code 312, while incarcerated at FCI Beckley, West Virginia, on March 19, 2008, at about 6:15 p.m., when you tossed your food tray onto the serving line and told a cook supervisor "Then you eat it" (Insolence), and began walking away from the employee, ignoring his order to stop (furthering the rude and impertinent behavior), then when the employee attempted to take you by the arm and stop you, you jerked away from him, balled your hands into fists, and told him, "you better let me go right now" (threatening behavior). Upon the employee radioing the compound officer for assistance, you further stated, "I'm not afraid of that, I'll fight them too," furthering the threatening behavior.

(Document No. 1-1, p. 8.)

(Id.) The record is void of any evidence that Petitioner requested that the security video footage be viewed during the hearing. The undersigned, therefore, finds that the absence of the security video footage did not violate Petitioner's due process rights because there was "some evidence" to support the DHO's decision. See Henderson v. Commonwealth of VA, 2008 WL 204480 (Jan. 23, 2008)(although petitioner claimed that the video surveillance footage would prove his innocence, the Court determined that petitioner's due process rights were not violated by the absence of additional evidence in the form of video footage because there was sufficient evidence to support the petitioner's punishment); Raynor v. Jackson, 2006 WL 33594333 (W.D.N.C. Nov. 20, 2006)(finding that petitioner's due process rights were not violated due to the disciplinary officer's failure to review video footage because there was "some evidence" to support the disciplinary officer's decision). As stated above, Petitioner was given written notice of the charges against him at least 24 hours before his hearing,[4] Petitioner received a statement of the reasons for the unfavorable decision in the form of a written report, and Petitioner had the opportunity to call witnesses in his defense. Accordingly, the undersigned finds that the disciplinary hearing comported with the due process requirements.

Finally, Petitioner argues that he was denied his "right to due process throughout the Bureau's discipline process which continued through his appeals of the DHO's findings to both the Regional and Central offices of the BOP." (Document No. 1.) Specifically, Petitioner claims that his due process rights were violated based upon the following: (1) Regional Director White's "failure to review the entire record on appellate review denied Petitioner due process" (Id., p. 12.);

---

[4] The undersigned notes that Petitioner received written notice of the charges on March 20, 2008, and the DHO hearing was held on April 8, 2008. (Document No. 1-1, p. 7.)

and (2) The National Appeals Administrator's denial of "Petitioner's appeal of the Regional Director's denial in 'rubber stamp' style" (Id., p. 13.). Inmates may file an appeal with the Regional Director within 20 days from the date he receives written notice of the DHO's decision. If the inmate is dissatisfied with the Regional Director's decision, the inmate may file an appeal with the Office of General Counsel. The undersigned notes that Petitioner took advantage of the appeal process, but the Regional Director and Office of General Counsel denied his appeals. The undersigned, however, finds that "appellate review is not an element of due process." Massey v. Ballard, 2009 WL 2916889 (S.D.W.Va. Sept. 8, 2009)(citing, Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)); also see Moses v. Bledsoe, 2004 WL 3317657, at * 4 (N.D.W.Va. Sept. 28, 2004)(stating "there is no due process right to an appeal process"). Accordingly, the undersigned finds that administrative officials did not violate due process by failing to overturn and expunge Petitioner's conviction of violating Codes 203 and 312.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United

States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

Date: February 19, 2010.

R. Clarke VanDervort
United States Magistrate Judge