IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

COREY T. WLASH,

                Petitioner,

v.                                          CIVIL ACTION NO. 5:09-cv-00199

D. BERKEBILE,

                Respondent.

**MEMORANDUM OPINION AND ORDER
ADOPTING PROPOSED FINDINGS AND RECOMMENDATION**

       The Court has reviewed Petitioner's Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Document No. 1), wherein Petitioner challenges his prison disciplinary violations for insolence towards staff and threatening a staff member. By Standing Order entered on March 5, 2009, this action was referred to United States Magistrate Judge R. Clarke VanDervort for total pretrial management and submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). On February 19, 2010, the Magistrate Judge submitted his Proposed Findings of Fact and Recommendation ("PF&R") (Document No. 8). He recommends that the Court find that the prison and administrative officials did not violate Petitioner's due process rights and recommends that the petition be dismissed and removed from the Court's docket. On

March 24, 2010, Petitioner filed his response to the PF&R.[1] For the reasons that follow, the Court finds Petitioner's asserted objections are without merit and adopts the PF&R.

I.

On April 7, 2005, Petitioner, Corey T. Wlash, pled guilty in the United States District Court for the Eastern District of Virginia to conspiracy to distribute five kilograms or more of cocaine and use of a firearm in relation to a drug trafficking crime. He was subsequently sentenced to a total of eighty-six (86) months imprisonment and a five-year term of supervised release. At all times relevant to the instant petition, Petitioner was a federal inmate housed at the Federal Correctional Institution in Beaver, West Virginia ("FCI Beckley").

Magistrate Judge VanDervort's PF&R sets forth in detail the relevant allegations and facts involved in this case, and the Court adopts by reference those facts. For context of the discussion herein, the Court provides the following brief summary: On March 19, 2008, Petitioner felt he was given a "substandard" serving of food by an inmate server. After requesting a different selection, he was told by a prison officer, supervising the cafeteria line, that the food would not be replaced and to move on. Petitioner "dropped his tray, telling CO Crain, 'you eat it,' and attempted to walk away[]". The Officer attempted to grab the Petitioner from behind in an effort to turn him around and Petitioner reacted in a manner to pull away. (Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") (Document No. 1) at 14.) The incident report describes the altercation as follows:

---

[1] On March 4, 2010, the Court directed Petitioner to file any objections to the PF&R by March 22, 2010. Petitioner's response was not filed until March 24, 2010. However, it appears from his envelope that the response was placed in prison mail on March 20, 2010, before the Court's deadline. Therefore, the Court will consider the Petitioner's objections as timely submitted.

> On [March 19, 2008 at 6:15 pm], I Jeffery Crain while supervising line #1 during the dinner meal . . . saw inmate Wlash . . . scan his I.D. card with fresh blood on the tip of his finger. He stated to the inmate in front of him that his fingernails had cut his finger, then he came to me complaining that the leg bone had been pulled out of his chicken. I told him there was nothing wrong with his chicken, and that I would not replace it. He then dropped his tray on the counter in front of me and said, 'Then you eat it' and started walking away. I gave him two loud verbal commands to stop. He looked at me and kept walking. I pursued him telling him to stop. He turned towards me and his right arm almost struck me. I grabbed a hold of his coat sleeve, and he began trying to jerk away saying, 'you better let me go right now.' He repeated this twice while trying to pull away from me. He did have his hands clinched into fists. Once I called compound he stated, 'I'm not afraid of that, I'll fight them to[o]!'

(Petition, Ex. A, Incident Report). In his petition, Petitioner maintains that he did not hear the officer tell him to stop and did not look back. (Petition at 14.) He also maintains that he did not attempt to pull away, strike or threaten the officer. (*Id*.) As a result of the incident, Petitioner was charged with demonstrating insolence toward staff, refusing to obey an order and threatening a staff member.

At his Initial Hearing, Petitioner provided the following statement to the Unit Disciplinary Committee ("UDC"): "I was wrong for making a scene in front of the other inmates. Check the cameras. I was escorted to SHU uncuffed by one staff. I was not a threat. I only turned around when he grabbed me." (Petition, Ex. A, Incident Report). The UDC referred the case to a Discipline Hearing Officer ("DHO"). Upon the conclusion of a hearing, the DHO found Petitioner guilty of insolence towards staff (Code Violations 312) and threatening a staff member (Code Violations 203) and sanctioned him thirty days disciplinary segregation and the loss of forty days of good conduct time ("GCT"). The DHO relied upon the written account of the incident by two staff members and

Mr. Wlash's own admissions.[2] The DHO's decision did not include any discussion or consideration of any request to review surveillance video footage. Petitioner exhausted his administrative remedies to no avail. Thereafter, he initiated the instant civil action.

In sum, Petitioner alleges in his Section 2241 petition that the Bureau of Prisons ("BOP") violated his due process rights by: (1) failing to investigate and present exculpatory evidence, (specifically, surveillance video footage of the incident which occurred on March 19, 2008) at his disciplinary hearing, (2) failing to conduct his Initial Hearing before the UDC within the time period provided for by 28 C.F.R. § 541.15(b) (*i.e.*, three working days excluding holidays and weekends), (3) failing to provide him with a written copy of the DHO's decision within the ten days prescribed by 28 C.F.R. § 541.17(g), and (4) continuing throughout his appeals of the DHO's findings, in both the Regional and Central Offices, to ignore his request that the surveillance video

---

[2] The Discipline Hearing Officer's Report includes the following summary of Petitioner's Statement at the hearing.
> The DHO reviewed the inmate's rights with inmate Wlash and he stated he understood his rights and was ready to proceed with the hearing. He verified that he did not wish a staff representative nor did he want to call any witnesses. He stated he did not have any documentary evidence for the DHO to consider. He said the [Incident] report is true inasmuch as he should not have acted up in there with all those people watching, and he admits saying the remarks quoted in the report, or in his exact words, 'Yes sir, something like that.' He said he told the staff member to take his hands off of him right now, but he said he did not jerk away from the staff. The DHO showed him the supporting memo from Mr. Whitt, and pointed out that Mr. Whitt also saw him jerking away. He said he does not remember doing that. The DHO asked him if he said, 'I'll fight them too.'? [sic] He said he did not say that, but he heard it said. The DHO asked him if he had his hands balled into fists? He said he could not say, at the time, he is not sure. He said he knows he was wrong for acting up in the line, in front of all those other people, and knows he does deserve something for acting like that.

(Petition, Ex. D, Discipline Hearing Officer Report at 1)

footage be reviewed and failing to review the entire record on appeal. Petitioner contends that he has consistently "requested that the security video of the purported incident be reviewed as such would support his innocence claim," because the video is "exculpatory evidence . . . that would both impeach the statements of the charging staff members and prove his innocence." (Petition at 8). He argues that the video would show that Officer Whitt, the second staff member on the scene, was not present for the "vast majority of the incident." Petitioner requests that the court set aside the DHO's findings on procedural grounds, expunge the incident from his central file and restore the forty days of good time credits sanctioned by the DHO. Upon consideration of these matters, the Magistrate Judge issued his PF&R to which Plaintiff now objects.

## II.

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner is acting pro se, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

5

III.

In his PF&R, Magistrate Judge VanDervort recommends that Wlash's Section 2241 petition be dismissed because the record does not present any indication of error of constitutional magnitude in the disciplinary proceedings and because the prison and administrative officials did not violate due process by failing to overturn and expunge Petitioner's conviction of violating Codes 203 and 312. Specifically, with respect to Petitioner's claims that his Initial Hearing was held one day after the time period prescribed by 28 C.F.R. § 541.15(b) and that he received the DHO's decision shortly after the ten days provided for by 28 C.F.R. §541.17(g), the Magistrate found that each regulation provides that an inmate "ordinarily" is entitled to those actions within the time period contemplated, but that the failure of prison officials to follow their own internal policies, procedures or regulations, alone, is insufficient to establish a due process violation. The Magistrate Judge found that Petitioner received all documents pertinent to the charges against him, was advised of his rights and had ample opportunity to present a defense to his charges. With respect to Petitioner's claim that he was denied due process when prison officials refused to review the security video footage or allow Petitioner to review the footage, Magistrate VanDervort found that the record is void of any evidence that Petitioner requested that the security video footage be reviewed during his DHO hearing and that Petitioner's DHO hearing was conducted on April 8, 2008, prior to when he requested the video footage in an administrative proceeding. He further found that the prison staff, the UDC and DHO acted fully within their discretion in developing the evidence utilized in the Petitioner's disciplinary proceedings and that the DHO's finding of guilt on the violations were supported by "some evidence." Finally, Magistrate Judge VanDervort found that although inmates

may file an administrative appeal of the violations, as Petitioner did in this case, that appellate review is not an element of due process.

Petitioner objects to Magistrate Judge VanDervort's determination that he received due process by largely reasserting the contentions made in his petition. He acknowledges that the "BOP may have provided all documents pertinent to the charges against him, [he] was advised of his rights, and had ample opportunity to present a defense to those charges," but maintains that "it was not completed in a timely manner as directed by the Code of Federal Regulations, § 541.15(b)." (Petitioner's Traverse Brief Setting Forth Meritorious Objections and Arguments to the United States Magistrate Judge's Proposed Findings and Recommendation to Dismiss the Above Action ("Pet.'s Obj.") (Document No. 12) at 11) (emphasis omitted)). He argues that conducting his Initial Hearing on the fourth workday following the incident is a "fatal error" of constitutional magnitude which "cannot be harmless" and that the Magistrate Judge "has taken the word 'ordinarily' from its intended meaning [.]" (*Id.*) (emphasis omitted). Petitioner also argues that contrary to the Magistrate Judge's finding, he repeatedly asked prison officials to review the surveillance footage, which he characterizes as exculpatory evidence, and further argues that he made this request before the DHO, but the DHO report does not indicate that he did so.[3]

Federal prisoners must be afforded due process before they can be deprived of their good conduct time in which there is a liberty interest. However, inmates do not enjoy "the full panoply of due process rights due a defendant in . . . [criminal] proceedings." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff*, the Supreme Court considered how prison disciplinary hearings must be

---

[3] Petitioner does not make any specific objection to the Magistrate Judge's finding that the administrative appellate review process is not an element of due process. Therefore, the Court need not conduct a *de novo* review of that contention. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).

7

structured to comport with the demands of due process and set forth what procedure is required at a minimum. In the context of a prison disciplinary hearing, due process requires that the inmate receive (1) advance written notice of the claimed violation at least twenty-four (24) hours before the hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not be unduly hazardous to institutional safety or correctional goals, (3) a written statement of the factfinders which sets forth the evidence relied upon and the reasons for the disciplinary action taken, and (4) an impartial factfinder. *Wolff*, 418 U.S. 563-69. Further, to satisfy the requirements of due process, a disciplinary decision must also be supported by "some evidence" to revoke good conduct time. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). There, the Supreme Court stated:

> This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant quest is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

(*Id*. at 455) (internal quotation and citations omitted).

Against this backdrop, the Court has reviewed *de novo* the pleading and attached exhibits in this action. The Court agrees with the analysis contained in the PF&R which is not meritoriously challenged by Petitioner. Petitioner contends that his due process rights were violated because his Initial Hearing and his receipt of the DHO's decision both occurred outside the time period set forth in the applicable BOP regulations. As the Magistrate Judge indicated, applicable BOP regulations provide that an inmate's "initial hearing before the UDC, ordinarily [will be] held within three work days from the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. §

541.15(b). This time frame, however, may be extended "for a good cause shown by the inmate or staff and documented in the record of the hearing." (*Id*. § 541.15(k)). Here, the incident underlying this civil action occurred on Wednesday, March 19, 2008, and the UDC did not conduct the initial hearing until Tuesday, March 25, 2008, the fourth work day, excluding weekends. "[A]ll that due process requires is that prisoners be given written notice of alleged violations at least 24 hours before a disciplinary hearing." *Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011). There is no dispute that Petitioner received written notice (the Incident Report) of the allegations against him on March 20, 2008, well before the UDC hearing on March 25, 2008, or the DHO hearing on April 8, 2008. Moreover, the record contains the staff's justification for the one-day delay. A review of the Incident Report reveals the following notation: "[h]earing was delayed due to staff unavailability due to ACA preparation." (Petition, Ex. A.) Petitioner did not suffer any prejudice as a result of the delay and it did not impose any "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472 (1995) (prison regulations give rise to a liberty interest only if they shield inmates from an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life.") Indeed, he has presented no such argument here. For the same reason, the Court finds that receipt of the DHO's decision shortly after the ten-day time period set forth in the applicable regulations also did not violate Petitioner's due process rights. The regulations at issue indicate when an action "ordinarily" will occur. That term is advisory and instructive, at best. *See Jones*, 637 at 846. Therefore, Petitioner's claims of untimely actions are insufficient to support a finding of due process violation.

  The Court turns next to Petitioner's contention that he was denied due process because the hearing officer did not review the video surveillance footage which allegedly supports his argument

9

that he is innocent of the disciplinary violations. Petitioner argues that he made the request to review the video before the UDC and DHO. As noted above, the Incident Report includes a statement of "check the cameras, I was escorted to SHU uncuffed by one staff[]" (Petition, Ex. A), while the DHO's report does not contain any statement that he asked for a review of the video footage. Assuming without finding that he made such a request before the DHO, and that the video shows that he was escorted to SHU uncuffed by one staff member, the Court finds that the absence of the video was not a constitutional violation particularly since Petitioner's own statements support the DHO's finding of guilt with respect to the alleged violations. Moreover, even if the prison guards did not follow their internal protocol to handcuff and escort him to the SHU or to hit their emergency alert, these facts are not necessarily relevant to the finding that he acted in a manner threatening another person with bodily harm. (*See* Petition, Ex. B.) The hearing officer relied upon the statements of the two staff members present at the scene and the Petitioner's own statements which includes his assertion that he knew he was wrong for acting up in the line in front of other people and that he knew he deserved something for acting like that. Just as the Magistrate Judge concluded, a review of the record before the Court reveals that the DHO's decision was supported by "some evidence'" and on these facts this Court will not substitute its judgment for that of the prison administrators.

*IV.*

Thus, based on the above findings, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document No. 8) be **ADOPTED.** The Court **ORDERS** that Petitioner's Section 2241 petition be **DISMISSED WITH PREJUDICE** and **DIRECTS** the Clerk to **REMOVE** this matter from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 13, 2011

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA